IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO.: 2·21·cc-502 |
| vs. | 18 U.S.C. § 1951(a) |
| | 18 U.S.C. § 2 |
| | 18 U.S.C. § 1956(h) |
| | 18 U.S.C. § 981(a)(1)(C) |
| | 18 U.S.C. § 982(a)(1) |
| | 28 U.S.C. § 2461(c) |
| **DARNELL KHAN and** | |
| ▇▇▇▇▇▇▇▇▇▇▇▇ | **UNDER SEAL** |
| | **INDICTMENT** |

## COUNT 1
### (Conspiracy to Commit Extortion)

**THE GRAND JURY CHARGES:**

1.      Beginning on a date unknown to the Grand Jury but beginning at least in or around January 2017 and continuing thereafter up to July 2017, the exact dates being unknown to the Grand Jury, in the District of South Carolina and elsewhere, the **DEFENDANTS DARNELL KAHN** and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ did knowingly and willfully did combine, conspire, confederate, and agree together and have a tacit understanding with each other, and with other persons both known and unknown to the Grand Jury, to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951(b).

2.     It was part of the conspiracy that the **DEFENDANTS**, and others, would do and cause to be done the following:

a.     **DEFENDANT DARNELL KAHN ("KAHN")** was a prisoner at the South Carolina Department of Corrections ("SCDC").

b.     **KAHN** and others known and unknown to the Grand Jury, smuggled smartphones into the SCDC in violation of state law. These smartphones contained features such as personal computers, telephones, digital cameras and videos, and Wi-Fi internet access.

c.     Using the interest access on the smartphones, **KAHN,** and other inmates and co-conspirators both known and unknown to the Grand Jury, at SCDC agreed, conspired, and orchestrated a plan to extort members of the United States Military by means of threatened force, violence or fear.

d.     It was part of the conspiracy that **KAHN,** and co-conspirators, both known and unknown to the Grand Jury, using a smartphone, joined internet dating websites, and posed as a young woman who was seeking a romantic relationship. On the dating websites, **KAHN,** and other co-conspirators both known and unknown to the Grand Jury, targeted young men who were in the military.

e.     After meeting the military members on the dating websites, **KAHN,** and co-conspirators both known and unknown to the Grand Jury, texted nude pictures of young women that he obtained by the internet. It was part of the conspiracy that **KAHN,** and co-conspirators both known and unknown to the Grand Jury, claimed these nude pictures were of the women that he was

impersonating on the dating website. After **KAHN,** and co-conspirators both known and unknown to the Grand Jury, texted nude pictures, he asked the military members to text nude pictures and other personal information in return.

f.  It was further part of the conspiracy that after exchanging nude pictures and other personal information, **KAHN,** and other co-conspirators both known and unknown to the Grand Jury, called the military members and claimed to be a private investigator. **KAHN,** and other co-conspirators both known and unknown to the Grand Jury, told the military members that the women who were depicted in the nude photographs were minors and not adults as listed on the dating website.

g.  **KAHN,** and other co-conspirators both known and unknown to the Grand Jury, then threatened to notify the military authorities and law enforcement that the military member was exchanging nude pictures with a minor unless the military member paid money.

h.  **KAHN,** and other co-conspirators both known and unknown to the Grand Jury, claimed that the money was needed for counseling and medical bills for the trauma that the women depicted in the photographs suffered from the sexually explicit text messages.

i.  **KAHN,** and other co-conspirators both known and unknown to the Grand Jury, told the military members that money needed to be wired to pay for the women's counseling and medical bills, or he would go to military authorities and law enforcement.

j.    It was further part of the conspiracy that **KAHN**, and other conspirators both known and unknown to the Grand Jury, recruited                   , and others both known and unknown to the Grand Jury, to retrieve the money that was wired by the military members.

k.    After retrieving the wired money,        and others, transferred the money to **KAHN**, and other co-conspirators both known and unknown to the Grand Jury.

3.    As part of this conspiracy, **KAHN**,       and other co-conspirators both known and unknown to the Grand Jury, did obtain more than \$12,675.00 from service members who lived in states across the country.

All in violation of Title 18, United States Code, Sections 1951(a).

## COUNT 2
### (Extortion)

4.    Beginning on a date unknown to the Grand Jury but beginning at least in or around January 2017 and continuing thereafter up to July 2017, the exact dates being unknown to the Grand Jury, in the District of South Carolina and elsewhere, the **DEFENDANTS DARNELL KAHN** and                  as principals, aiders and abettors, and coparticipants in jointly undertaken criminal activity did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951, in that **DEFENDANTS** obtained the money of J.C., with his consent, induced by the wrongful use of actual and threatened force, violence, and fear, including fear of economic loss and employment termination, as described in Count 1.

In violation of Title 18, United States Code, Section 1951(a) and 2.

## COUNT 3
### (Conspiracy to Commit Money Laundering)

### THE GRAND JURY FURTHER CHARGES:

5.       Beginning on a date unknown to the Grand Jury but beginning at least in or around January 2017 and continuing thereafter up to July 2017, the exact dates being unknown to the Grand Jury, in the District of South Carolina and elsewhere, the **DEFENDANTS DARNELL KAHN** and                                                                as principals, aiders and abettors, and coparticipants in jointly undertaken criminal activity, knowingly and willfully combined, conspired, and agreed with each other and with others, both known and unknown to the Grand Jury, to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is, the extortion described in Count 1, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and further knowing that the transactions were designed and done, in whole or in part, with the intent to promote the unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

All in violation of Title 18, United States Code, Sections 1956(h) and 2.

## **FORFEITURE**

### EXTORTION:

Upon conviction for violation of Title 18, United States Code, Section 1951, the Defendants, **DARNELL KAHN** shall forfeit to the United States any property, real or personal, constituting, derived from, or traceable to proceeds the Defendants obtained directly or indirectly as a result of such offenses.

### MONEY LAUNDERING:

Upon conviction for violation of Title 18, United States Code, Sections 1956 as charged in this Indictment, the Defendants, **DARNELL KAHN** and shall forfeit to the United States any property, real or personal, constituting, derived from, or traceable to proceeds the Defendants obtained directly or indirectly as a result of such offenses and any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, as charged in the Indictment, or any property traceable to the offenses.

### PROPERTY:

Pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c), the property subject to forfeiture includes, but is not limited to, the following:

(a)    Cash Proceeds/Money Laundering:

A sum of money equal to all property involved in the money laundering offenses charged in the Indictment, and all interest and proceeds traceable thereto, for which the Defendants are liable as the result of their violation of 18 U.S.C. §1956.

(b)     Cash Proceeds/ Forfeiture Judgment:

.     A sum of money equal to all proceeds the Defendants obtained, directly or
        indirectly, from the offenses charged in this Indictment, and all interest and
        proceeds traceable thereto, and/or such sum that equals all property derived from
        or traceable to their violations of 18 U.S.C. § 1951.

SUBSTITUTE ASSETS:

If any of the property described above, as a result of any act or omission of the Defendants:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without
               difficulty,

it is the intent of the United States, pursuant to 21, United States Code, Section 853(p), as

incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other

property of the said Defendant(s) up to the value of the above-described forfeitable property.

Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title

28, United States Code, Section 2461(c).

A ___True___ Bill

FOREPERSON

___M. Rhett DeHart___
M. RHETT DEHART (kao/afb)
ACTING UNITED STATES ATTORNEY